DUNCAN, Circuit Judge,
concurring:
I concur in Parts I — III of the majority opinion. I also fully concur in Parts IV and V, because I agree that the most plausible reading of the Constitution’s Recess Appointments Clause limits “the Recess” to the so-called “intersession break” between two legislative sessions. I write separately to briefly underscore what, in *661 my view, compels the conclusion reached by the majority in this regard.
I begin by explicitly recognizing what should be evident from the spirited and principled debate between my two colleagues: this appeal presents a challenging issue with respect to which there is limited guidance. The Constitution does not define “the Recess,” and we find no discussion of the Recess Appointments Clause at the Constitutional Convention in Philadelphia or the state ratifying conventions. Alexander Hamilton’s brief essay in Federalist 67 addresses the Recess Appointments Clause only in passing, focusing instead on counteracting the misrepresentation made by opponents of ratification that the Constitution permitted the President to fill vacancies in the Senate. Historical practice in the decades following ratification of the Constitution is similarly sparse, and too easily subject to manipulation by “savvy lawyers,” as the dissent rightly notes. Diss. Op. at 669. Nor is it obvious how the uptick in intrasession recess appointments since 1981 ought to affect our analysis. Compare Marsh v. Chambers, 463 U.S. 783, 792, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) (upholding the practice of beginning legislative sessions with a prayer because its long history of use had made it “part of the fabric of our society”), with INS v. Chadha, 462 U.S. 919, 944, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (observing that the increased frequency of the Congressional veto in statutes “sharpened rather than blunted” the judicial inquiry).
But therein lies the flaw at the heart of the dissent’s logic. It faults the majority’s textual arguments, but, significantly, proffers none in response. Rather, the dissent falls back on the same purposive reading of legislative tea leaves for which it chides the majority, but without any textual underpinning. It is certainly noteworthy that “the Recess” sits in grammatical tension with a reference to all inter-and intrasession breaks. And although perhaps not decisive, the interplay of “recess” and “adjourn/adjournment” and the framers’ use of “Session,” see Maj. Op. at 647-49, at least tips the scale of the textual argument in favor of the majority’s intersession-only reading of the Recess Appointments Clause when there is no counter-weight in the balance.
I am further troubled — and unpersuaded — by the dissent’s skating past the constitutional text and “looking] to the purpose of the clause as our lodestar.” Diss. Op. at 669. If, as the dissent contends, the text is ambiguous, surely discerning the proper application of the Recess Appointments Clause’s purpose is even more so. The clause’s purpose is, as the dissent acknowledges, actually twofold: “to ensure a functioning government and maintain the separation of powers between the executive and legislative branches of that government.” Id. at 662. The dissent reaches its conclusion only by elevating the goal of ensuring the functioning of the government when the Senate is (ostensibly) unavailable to provide its advice and consent, and ignoring that of maintaining the separation of powers by cabining the President’s unilateral appointments power to limited circumstances. The dissent’s failure to explain why it has emphasized one of the Recess Appointments Clause’s purposes and largely ignored the other also gives one pause.
Finally, the majority offers a more judicially manageable interpretation of “the Recess” than that offered by the dissent. Although the dissent criticizes the majority’s reading of the Recess Appointments Clause as “unworkable in practice,” id. at 664, in my view, that description more aptly applies to the dissent’s position. Limiting “the Recess” to intersession breaks creates clear parameters for the *662 Legislative and Executive branches on when the Senate is in recess for purposes of the Recess Appointments Clause. Such clarity is of particular importance when, as here, the case implicates the separation of powers doctrine. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 239, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (identifying the separation of powers doctrine as a structural safeguard which requires “establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict”).
The dissent’s proposed standard, by contrast, offers no guidance, meaningful or otherwise. Its view that the Senate would be in “the Recess” when it “is not engaged in its regular course of business, is unavailable to receive messages from the President, or cannot meet to consider a nominee for a position,” Diss. Op. at 667, raises more questions than it answers. What constitutes the Senate’s “regular course of business”? What precludes the Senate from providing its advice and consent during a pro forma session? How long must the Senate be unavailable to receive messages, and what (and who) determines its unavailability? Would a senator filibustering a nominee mean the Senate “cannot meet to consider th[at] nominee for a position,” and therefore give rise to the President’s recess appointments power? I fear that these and other questions, for which the dissent provides no answers, would be more, rather than less, problematic.
I therefore fully concur in the majority’s reading of the Recess Appointments Clause.